570 So.2d 1035 (1990)
STATE of Florida, Appellant,
v.
Anthony DAVILA, Luis Fernandez and Sharon Willis, Appellees.
No. 89-00450.
District Court of Appeal of Florida, Second District.
November 21, 1990.
*1036 Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellant.
Thomas J. Hanlon, Tampa, for appellee Davila.
Anthony F. Gonzalez, P.A., and Howard J. Shifke, P.A., Tampa, for appellee Fernandez.
Judge C. Luckey, Jr., Public Defender, and Linda J. McKinley, Asst. Public Defender, Tampa, for appellee Willis.
PARKER, Judge.
The state appeals the trial court's dismissals[1] of its informations against Anthony Davila, Luis Fernandez, and Sharon Willis for conspiracy to traffic in cocaine and trafficking in cocaine. The dismissals resulted when the state failed to produce pursuant to the court's order confidential informants who had information against another informant, since disclosed, who was involved in the drug sting operation that gave rise to the present charges.
The facts provided us in the record are limited. It appears that a confidential informant, Anthony Carrera, began working with undercover Hillsborough County officers on a drug sting operation after he was arrested on criminal charges. Carrera advised the officers that he could arrange a purchase of two kilos of cocaine from Fernandez. A detective then accompanied Carrera to Fernandez's house. Officers monitoring the house observed Willis leave the house and drive around the neighborhood; they believed she was acting as a lookout. Willis then drove to a place where a Suzuki automobile occupied by two Latin males was parked. Willis spoke with the Suzuki's occupants. The state maintained below that the Suzuki was used to transport the two kilos of cocaine to the house. Once the officers were certain the cocaine was in the house, they moved in and secured the house detaining Fernandez and Davila. Afterward, the officers procured a search warrant which was served a few hours later. During the wait for the warrant, Willis returned to the house and was detained with the others. In their search of the house, the police found over two kilos of cocaine and arrested Davila, Fernandez, and Willis, charging all three with conspiracy to traffic in cocaine and trafficking in cocaine.
In pretrial proceedings after the defense filed a motion to disclose, the state voluntarily produced Carrera for deposition. Fernandez's counsel represented below that Carrera said in deposition that he (Carrera) did not use cocaine and did not deal in cocaine. According to Fernandez's attorney, Officer Davis, in deposition, contradicted Carrera's statements regarding Carrera's involvement in drugs and stated that Carrera did use cocaine and dealt in cocaine and that Carrera admitted that cocaine seized from Carrera's home belonged to Carrera.
Carrera had been subjected to police searches of his home and seizures of criminal evidence therein on two separate occasions, once before and once after the arrests of the defendants in this case. The informant providing probable cause for the *1037 first search of Carrera's home was designated by the number 88-56. The informant which furnished probable cause for the second search warrant for Carrera and his home was identified by the designation 88-79.
The defense sought by separate motions disclosure of confidential informants 88-56 and 88-79 (CIs), alleging that disclosure was necessary for three reasons. First, they claimed the CIs were needed to confront the state witnesses at trial and, specifically, to impeach Carrera's credibility as to his use of drugs and his dealings in drugs, and to detail the crimes charged against Carrera. Second, they claimed to need the CIs to present their defense that Carrera had set them up in order to protect a supplier of Carrera's in Miami. Third, the defense sought to introduce the CIs' testimony to test Carrera's memory of Carrera's drug activities and the effect of Carrera's drug use on his ability to remember those activities.
After a hearing on the defense motions to disclose, the trial court ruled that the state was to produce the CIs for an in camera inspection. The judge conducted an in camera voir dire of CI 88-56[2] and thereafter ordered 88-56 be disclosed because 88-56's testimony, "if found to be true would indicate that the state's witness in this case, the confidential informant [Carrera] quite possibly perjured himself in a sworn deposition." When the state refused to disclose the identity of CI 88-56, the trial judge dismissed the charges against all three defendants.
In discussing the standards applicable to the disclosure of confidential informants, the third district court in State v. Villar, 554 So.2d 576 (Fla. 3d DCA 1989) noted:
As a general rule, the state has the privilege of not disclosing the identity of a confidential informant; however, there are exceptions to this rule, e.g., where the identity of the informer is essential to the defense. State v. Acosta, 439 So.2d 1024 (Fla. 3d DCA 1983); Elkins v. State, 388 So.2d 1314 (Fla. 5th DCA 1980); Fla.R.Crim.P. 3.220(c)(2). The general rule and its exception have been set forth in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Toombs, 497 F.2d 88 (5th Cir.1974), and Treverrow v. State, 194 So.2d 250 (Fla. 1967). The burden is on the defendant to show that he warrants an exception to the general rule of nondisclosure. See State v. Davis, 308 So.2d 539 (Fla. 3d DCA 1975). If informers' names were subject to being readily revealed, the use of confidential informants, an enormously important aid to law enforcement, would be almost cut off. For this reason, a privilege is recognized in respect to disclosure of the identity of an informer who has given information about supposed crimes to a prosecuting or investigating officer or to someone for the purpose of its being relayed to such an officer.
Id. at 576-77 (citation omitted).
We agree with the state's argument in the trial court and in this appeal that the reasons listed by the defense and accepted by the trial court for the CIs' disclosure are collateral to the issues at trial, and the CIs' testimony would not be admissible to impeach Carrera's credibility or memory. See Rice v. State, 564 So.2d 597 (Fla. 2d DCA 1990). In Rice, this court observed:
"[W]hen a question, posed on cross-examination, relates only to a matter collateral and non-material to any issue at trial, the witness' answer to the question is deemed conclusive. Consequently, the witness cannot be impeached with regard to this testimony by any of the normal means of subsequent impeachment, including contradiction testimony by another witness."
(Citations omitted). The test of relevancy and materiality is whether the cross-examining party could have, for any purpose other than impeachment, introduced evidence on the subject in its case in chief. Johnson v. State, 178 So.2d 724 *1038 (Fla. 2d DCA 1965). If the evidence is relevant to independently prove a material fact or issue or if it goes to discredit a witness by pointing out bias, corruption, or lack of competency, it will be allowed.
Id. at 598 (citation omitted).
The defense has stipulated that the two undisclosed CIs were not involved in the criminal charges in this case against Davila, Fernandez, and Willis; therefore, the CIs' testimony would not be relevant to any issue in the case against these defendants. Even if Carrera were to open the door to impeachment on the matter of his previous involvement in drugs, and we determine that matter to be noncollateral and susceptible to independent proof at a trial of these defendants, there is still no reason to disclose the identity of the CIs. The testimony of the CIs with respect to Carrera's drug involvement would merely be cumulative to the testimony available from Officer Davis on that issue. The officer's testimony would also enable the state to prove perjury against Carrera if that were a concern below for support of disclosure.
Furthermore, there is no factual basis in the record to sustain a defense, assuming such a defense to be valid under these circumstances which we do not decide, that Carrera set up these defendants in order to protect some other supplier of drugs. Nor did the trial court at the in camera hearing to determine disclosure of CI 88-56 assert such a defense as a reason for ordering disclosure. We are uncertain from this record the precise defense which these defendants were attempting to establish by their allegation that Carrera set them up. Although such a defense sounds in entrapment, which is a legally recognized defense, see State v. Harklerode, 567 So.2d 982 (Fla. 5th DCA 1990), none of the defense motions expressly mention the defense of entrapment.
In order to obtain the disclosure of a CI, the defendant must allege a specific defense sought to be established through that CI. State v. Hernandez, 546 So.2d 761 (Fla. 2d DCA 1989). The mere allegation that disclosure is necessary in order for the defendant to prepare properly and adequately for trial is insufficient. The defendant must make a preliminary showing of the colorability of the defense prior to disclosure. Hernandez, 546 So.2d at 761. A bare allegation that failure to disclose would impede the ability to prepare a defense is not sufficient to require disclosure; the defense must be supported by sworn proof. Harklerode; State v. Zamora, 534 So.2d 864 (Fla. 3d DCA 1988). Further, "concrete circumstances" must be asserted as grounds before a motion for disclosure should be granted. State v. Carnegie, 472 So.2d 1329, 1330 (Fla. 2d DCA 1985).
Based upon the lack of a proper basis to require the state to reveal the CIs' identity and to produce the CIs, we conclude that the orders demanding the CIs' disclosure were improperly entered. Therefore, we reverse the orders dismissing the charges against these defendants entered as a sanction for the state's refusal to comply with the disapproved disclosure orders. We remand the case to the trial court for reinstatement of the charges and for further proceedings consistent with this opinion.
SCHOONOVER, C.J., and CAMPBELL, J., concur.
NOTES
[1] Circuit Judge Perry Little entered the orders of dismissal based upon the defense's motions to impose sanctions on the state for its refusal to disclose confidential informants. These orders followed Acting Circuit Judge James Arnold's rulings compelling disclosure of the confidential informants.
[2] The state represented to the trial court that CI 88-79 could not be located. Judge Arnold ruled that, if CI 88-79 were found, an in camera examination should be conducted at that time to determine whether disclosure as to that CI was required.