GROSS, C.J.
 

 After a confidential informant purchased cocaine from a residence, a search warrant issued. On the premises when the police executed the warrant, the defendant in this case was arrested. During later proceedings, he sought disclosure of the identity of the confidential informant because it was relevant and helpful to his defense. The trial court refused to compel disclosure. We reverse for the circuit court to hold an
 
 in camera
 
 hearing to determine whether the informant has information germane to the defense in this case.
 

 Stanley Thomas was serving a sentence of four years of probation for the crime of delivery of cocaine. He was charged with violating that probation by committing the new offenses of trafficking in cocaine and possession of drug paraphernalia. Al
 
 *242
 
 though he was acquitted of the new charges, the trial court found that Thomas had violated his probation.
 

 Thomas’s new charges arose from the execution of a search warrant at a residence. A confidential informant made a controlled buy at the residence from the occupant of the house. This purchase supplied part of the probable cause that supported the issuance of the warrant.
 

 Prior to the violation of probation hearing, Thomas moved for an order requiring the state to disclose the confidential informant, contending the informant had information relevant to his defense. Thomas asserted that the house belonged to his uncle, he did not live there, and he was not involved with any of the contraband found during the search, even though he was at the house when the warrant was executed. The trial court denied the motion for disclosure.
 

 At the violation of probation hearing, Thomas’s defense was that he could not be found guilty of constructive possession of the drugs and paraphernalia, because he did not reside at the residence and the drugs were not in plain view.
 

 A key state witness at the hearing was the lead detective. He said that he entered the residence after SWAT officers, who had secured Thomas face down on the floor. A 14 year old girl and a baby were also present. The detective said he found crack cocaine in plain view on the dining room table and 40 grams of crack cocaine and an ounce of cocaine in a knife drawer by the kitchen sink. The crack cocaine was freshly cooked, still warm and wet. The detective said that scales and packaging materials also were in plain view.
 

 The detective testified that, when he asked Thomas if those items were all they would find, Thomas replied, “[N]o, that’s all, there’s nothing else in the house.” After being read his
 
 Miranda
 
 rights, Thomas said he would speak with the detective, although he did not sign a waiver. A narcotics dog alerted at several places in the house. Additional crack was found in a bedroom closet in a coat pocket, along with almost a thousand dollars in cash. When the detective asked Thomas about the money, Thomas told him he was in school and not working and laughingly joked about how he acquired the money. The detective construed his response to mean that Thomas earned money by selling narcotics.
 

 The detective identified an insurance bill addressed to Thomas that was seized during the search. It was placed into evidence. A file cabinet in a bedroom contained Thomas’s personal records, but the detective did not collect those records.
 

 During Thomas’s cross-examination, the trial court sustained objections to questions dealing with the informant.
 

 Supporting Thomas’s defense, the probation officer testified that Thomas never listed the address where he was arrested as his residence and never tested positive for drugs.
 

 When presenting his case, Thomas’s attorney first called the girlfriend of Thomas’s uncle. She testified that she and the uncle had been living in the residence at the time of the search. There was only one bedroom; the other room was used for storage. Her young daughter stayed there on and off.
 

 The girlfriend said that Thomas frequented the apartment because he used the computer for school, typically staying about an hour. He did not have a key and did not keep his clothes there. Electric bills in the girlfriend’s name were introduced into evidence. She said that Thomas did not keep personal items at the house, but she had no knowledge of what
 
 *243
 
 might have been in the file cabinet. She also knew nothing about drugs in the apartment.
 

 Thomas testified that he lived at a different location. He had a job, and he attended school to study game and simulation programming. This course of study required a computer and he did not own one. So, he used his uncle’s computer to take online classes three or four days a week for an hour or two.
 

 Thomas said he was disabled and pointed out that his job was not a high paying one; several members of his family helped him in different ways. He lived with his sister. His mother contributed to his probation costs and living expenses. His uncle paid his car insurance; therefore, the bill in Thomas’s name was mailed to his uncle’s address. He introduced a variety of mail sent to him at his other address.
 

 Thomas pointed out that, since being placed on probation, he had gotten his GED and started college. Thomas explained that on the day of his arrest, he had been playing a video game while waiting for an email from a professor. Thomas received his
 
 Miranda
 
 rights but disagreed with the detective about the questions asked. He said he would not have been laughing and bragging after just having been arrested.
 

 Thomas denied owning the drugs; had he known what was going on at the apartment, he would not have gone there. He denied that anything that belonged to him had been in the file cabinet. He denied that drugs and drug paraphernalia had been in plain view and said that the police had lied about the location of the drugs. He denied that the money in the coat belonged to him.
 

 Thomas proffered what the detective had said in deposition — that the informant told the detective that he could buy drugs from someone named “Stan,” and described a man with a different build and hair style than Thomas. However, at an earlier hearing, the state represented that the informant’s description of the drug seller matched Thomas. Thomas wanted to question the informant, because he believed that the informant would testify that someone other than Thomas had sold him the drugs from the residence.
 

 In closing argument, Thomas contended that the detective was not credible. To that end, he pointed to the photos taken by the SWAT team before the search, which did not show scales and cocaine in plain view.
 

 A trial court’s orders regarding discovery of confidential informants are generally reviewed for an abuse of discretion.
 
 E.g., Harris v. State,
 
 939 So.2d 338, 339 (Fla. 4th DCA 2006). Recently, in
 
 State v. LaBron,
 
 24 So.3d 715 (Fla. 4th DCA 2009), we explained the dynamics of a defendant’s request to disclose a confidential informant:
 

 The state has a limited privilege to withhold the Cl’s identity.
 
 Miller v. State,
 
 729 So.2d 417, 419 (Fla. 4th DCA 1999);
 
 State v. Zamora,
 
 534 So.2d 864, 867 (Fla. 3d DCA 1988) (quoting from
 
 Roviaro v. United States,
 
 353 U.S. 53, 59, 60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). The purpose of the privilege is to encourage citizens to perform their obligation of communicating their knowledge of the commission of crimes to law enforcement.
 
 Roviaro,
 
 353 U.S. at 59, 77 S.Ct. 623.
 

 If the Cl’s identity is to be disclosed, it is the defendant who has the burden of showing why an exception to the rule of nondisclosure applies.
 
 E.g., Miller,
 
 729 So.2d at 419 (citing
 
 Zamora,
 
 534 So.2d at 868).
 

 Florida Rule of Criminal Procedure 3.220(g)(2) provides that disclosure may
 
 *244
 
 be required in one of two circumstances: “Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose the informant’s identity will infringe the constitutional rights of the defendant.” Citing
 
 Roviaro,
 
 353 U.S. at 60-61, 77 S.Ct. 623, this court explained as follows:
 

 Disclosure of a confidential informant is required if an informant’s identity or content of his communication is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause. The first component necessarily centers around a specific defense asserted by the defendant in the case, as to which the informant’s testimony is material and helpful.
 
 See State v. Zamora,
 
 534 So.2d at 868. The second component concentrates on general due process considerations and is not confined to a defense raised by the defendant.
 

 Miller,
 
 729 So.2d at 419.
 

 Id.See also id.
 
 (citing
 
 State v. Ayala,
 
 713 So.2d 1050, 1052 (Fla. 3d DCA 1998);
 
 (Wilson v. State,
 
 13 So.3d 83, 84 (Fla. 2d DCA 2009));
 
 Featherstone v. State,
 
 440 So.2d 457 (Fla. 4th DCA 1983) (utilizing analysis in violation of probation case).
 

 “As a general rule, an informant’s identity need not be disclosed when the informant’s sole role is to provide probable cause in support of a search warrant.”
 
 State v. Burgos,
 
 985 So.2d 642, 643 (Fla. 2d DCA 2008). However, disclosure of an informant is appropriate where it is necessary to advance a specific defense.
 

 When asserting that disclosure of information is necessary to establish a specific defense, “[t]he defendant must make a preliminary showing of the eol-orability of the defense prior to disclosure.”
 
 State v. Hernandez,
 
 546 So.2d 761, 762 (Fla. 2d DCA 1989);
 
 see Harris v. State,
 
 939 So.2d 338 (Fla. 4th DCA 2006),
 
 review dismissed,
 
 946 So.2d 1070 (Fla.2006). The defendant must not only allege a legally cognizable defense, but he or she must also support the defense with sworn evidence.
 
 State v. Davila,
 
 570 So.2d 1035, 1038 (Fla. 2d DCA 1990) (holding that the defendant failed to establish by sworn proof that disclosure of the confidential informant’s identity was necessary to a legally recognized defense). “A bare allegation that the defendant cannot prepare his case without disclosure is insufficient.”
 
 State v. Mashke,
 
 577 So.2d 610, 612 (Fla. 2d DCA 1991).
 

 State v. Borrego,
 
 970 So.2d 465, 467 (Fla. 2d DCA 2007). When a defendant succeeds in meeting the “initial burden of showing that disclosure is necessary to a specific defense, the trial court should hold an
 
 in camera
 
 hearing to determine, in fact, whether the disclosure would be relevant and helpful to the defense.”
 
 State v. Roberts,
 
 686 So.2d 722, 723 (Fla. 2d DCA 1997) (citations omitted).
 

 Although the general rule is that the state need not disclose the identity of an informant whose sole role was to provide probable cause for a search warrant, this is not an inflexible, bright line rule that governs every case. Here, the trial court rejected Thomas’s argument that the informant’s testimony was relevant and helpful to his defense.
 

 Here, even though the informant supplied the probable cause for the search warrant, he also may have had information relevant to Thomas’s defense. The controlling case is
 
 Spataro v. State,
 
 179 So.2d 873, 878 (Fla. 2d DCA 1965) (quoting
 
 Roviaro v. U.S.,
 
 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (emphasis supplied)), where the second district determined that the
 
 “possible significance of the informer’s testimony
 
 ” outweighed any public interest
 
 *245
 
 in favor of nondisclosure of an informant’s identity.
 
 See also State v. Diaz,
 
 678 So.2d 1341, 1348 (Fla. 3d DCA 1996) (affirming order of dismissal where state refused to produce tipster, whose testimony that someone other than defendant was seller of drugs was material to rebut the testimony of the state’s sole witness). In
 
 Spataro,
 
 as in this case, a search warrant was issued on the basis of an informant’s purchase of drugs at a residence.
 
 Spataro,
 
 179 So.2d at 875. Pursuant to the warrant, the police searched the house and found marijuana.
 
 Id.
 
 Doles, the primary resident of the house at the time of the search, was arrested.
 
 Id.
 
 Doles and Spa-taro lived together and shared the master bedroom where the drugs were found.
 
 Id.
 
 As a state witness, Doles testified that Spataro used the drawer in which the drugs were found and that the closet was shared by both women.
 
 Id.
 
 at 876. The defendant Spataro testified that “everyone had access to the room,” and that Doles “was in and out of [her] drawers.”
 
 Id.
 
 She also denied ever having seen the marijuana and claimed that it did not belong to her.
 
 Id.
 

 Noting that it was a “constructive possession” case, the second district held that the trial court committed reversible error in failing to require a prosecution witness to divulge the name of the informant on cross-examination.
 
 Id.
 
 at 878-81. It explained that finding contraband to which several people have equal access will not support a conviction for possessing that contraband.
 
 Id.
 
 at 879. The court reasoned that knowledge of the presence of the drugs was inferred from Spataro’s living there and that testimony by the informant that Doles had sold him the drugs would be relevant to Spataro’s defense that the drugs belonged to Doles, because
 

 it would have materially affected the credibility of her testimony. Furthermore, it would have shown the possession of the narcotics to be in the State’s witness rather than the defendant, since there was no attempt to establish joint possession. Additionally, it was Doles’ testimony which proved that the defendant had knowledge of the presence of the narcotics. Without knowledge, there can be no valid conviction.
 

 Id.
 
 at 880 (citation omitted). The second district pointed out that the testimony of Doles, whose credibility was being questioned, was not cumulative but was decisive to a lawful conviction in the case.
 
 Id.
 
 at 881.
 

 As in
 
 Spataro,
 
 Thomas made a significant preliminary showing that the informant’s testimony might impact the case in two ways — it would support the notion that someone else had actual possession of the drugs and it would discredit the state’s key witness. Thomas disputed that he resided at the residence and presented evidence that he was merely visiting his uncle, who lived there. The fact that occupancy was disputed is significant, because
 

 [i]n many instances ... the ability to control narcotics will be inferred from the ability to exercise control over the premises where they are found. For this reason, the cases have sharply distinguished between the culpability of a mere visitor from that of an owner or an occupant of premises containing illicit drugs in plain view.
 

 Jean v. State,
 
 638 So.2d 995, 996-97 (Fla. 4th DCA 1994) (quoting
 
 Johnson v. State,
 
 456 So.2d 923 (Fla. 3d DCA 1984)).
 

 The only evidence that the drugs and paraphernalia were found in plain view was the lead detective’s testimony, which was contradicted by photographs taken by the SWAT team before the search. The photos thus corroborate the testimony of Thomas and his uncle’s girlfriend that there was no cocaine in plain view on a
 
 *246
 
 coffee table. Thomas also argued the informant’s testimony would undermine the detective’s credibility because the detective testified in deposition that the informant identified Thomas from a photo line-up as the person who sold him the drugs. Thomas asserted in his sworn motion that the informant would testify that he did not identify Thomas as the man who sold him the drugs, because he was not the man who did so. The finding that Thomas violated his probation turned on the detective’s credibility. The informant’s testimony might well devastate the detective’s credibility, especially when taken together with the photographs.
 

 We remand for the circuit court to conduct an
 
 in camera
 
 hearing to determine whether the testimony of the informant is relevant to the defense. If the court determines that the testimony is relevant, it should order disclosure of the confidential informant, set aside the order finding appellant in violation of probation, and conduct a new violation of probation hearing.
 

 MAY and CIKLIN, JJ., concur.