EMAS, K., Associate Judge.[1]

INTRODUCTION

Robert Joshua (“Joshua”) appeals his convictions and sentences for trafficking in methamphetamine (Count I) and trafficking in methylenedioxymethamphetamine (Count II). The State of Florida cross-appeals the trial court’s jury instruction on the defense of entrapment. For the reasons that follow, we reverse the conviction and sentence on Count I, and remand for a new trial on that count, with further directions that the trial court conduct a proper in camera hearing on Joshua’s motion to compel disclosure of the identity of the confidential informant. We affirm the conviction and sentence on Count II, and affirm the State’s cross-appeal.

BACKGROUND

On November 22, 2009, Detective Thomas Reed of the Fort Lauderdale Police Department received a phone call from attorney Michael Leader. In that conversation, attorney Leader told Detective Reed that he had information from a client (who was incarcerated in the Broward County Jail), that a package containing methamphetamine (“crystal meth”) was going to be delivered via Federal Express (“FedEx”) to a person named Robert Joshua, at a specific street address in Fort Lauderdale (“Fort Lauderdale home”). Detective Reed asked attorney Leader to obtain additional details. Leader then obtained those additional details and called Detective Reed back, this time providing the FedEx tracking number for the package. However, at no time did attorney Leader provide Detective Reed with the name of the client from whom attorney Leader received this information.
Acting on this tip, K-9 Deputy Julie Foster and her certified drug detection canine (K-9 Kim) were dispatched to the FedEx facility in Fort Lauderdale to locate the package with the identified tracking number. Once the package was located, Deputy Foster placed it next to three other randomly-selected packages, and the *853 drug detection dog alerted to the package with the identified tracking number, signifying the presence of narcotics. The package was seized and a search warrant was obtained. Pursuant to the warrant, the police opened the package, which contained 28.4 grams[2] of crystal meth.
Detective Reed then prepared an affidavit and application for an anticipatory search warrant[3] for the Fort Lauderdale home. The affidavit indicated Detective Reed would attempt to deliver the package at the Fort Lauderdale home and, if the package was accepted by someone within the premises, he would execute the search warrant to retrieve the crystal meth, conduct a narcotics investigation and effectuate an arrest if appropriate. In this affidavit, Detective Reed indicated that the information concerning the package had been obtained from “a documented confidential informant with the Ft. Lauderdale Police Department” who “has provided information in past investigations and has proven to be trustworthy and reliable.”
The anticipatory search warrant was issued on November 24, 2009, and on that same day an undercover police officer, dressed as, a FedEx delivery person, knocked on the door at the Fort Lauder-dale home with the re-sealed package containing crystal meth. Joshua opened-the door and took the package. Detective Reed and other officers then waited approximately fifteen to twenty minutes before knocking on the door again. Joshua opened the door and told Detective Reed “it’s in the safe, I knew you were coming.” Joshua then opened the safe located in his master bedroom closet, where the 28.4 grams of crystal meth were found. The FedEx packaging, in which the crystal meth had been delivered, was found in a trash can in the bedroom. Police also seized $78,376- found in the safe.
During the execution of the warrant, police observed, in plain view on top of the bedroom dresser, fifty-two methylenediox-ymethamphetamine (“MDMA” or “ecstasy”) pills, which were seized along with the crystal meth. According to Detective Reed, Joshua admitted to selling ecstasy, but denied that he ordered the crystal meth or that he was expecting its delivery. Joshua was arrested- and charged with trafficking in crystal meth (Count I) and trafficking in ecstasy (Count II). Joshua pleaded not guilty to both charges.

The Motion to Compel Disclosure of the Identity of the Confidential Informant

Prior to trial, Joshua filed a motion to compel disclosure of the identity of the confidential informant, asserting he intend *854 ed to present as a defense that he lacked knowledge the package was being sent to his home. Joshua contended that the package was deliberately sent to him by an unknown person who wished to cause his arrest. Accordingly, Joshua asserted, the State was required to disclose the identity of the confidential informant because it was necessary and relevant to Joshua’s defense, and that, at a minimum, the court was required to take the testimony of the confidential informant at an in camera hearing to determine whether it was relevant to Joshua’s defense. Attached to the motion was Joshua’s affidavit, wherein he averred that he lacked any knowledge that the package containing crystal meth was being sent or delivered to his home; that he lacked any knowledge regarding the person who sent it; and that the package was deliberately sent to him by a person who wished to cause his arrest.
The court conducted an in camera hearing on October 25, 2010. In attendance were the prosecutor, Ted Daus, Detective Reed and attorney Leader. Neither Joshua nor his counsel were permitted to attend the in camera proceeding.[4] Attorney Leader testified that he had a client with no prior criminal history who was arrested for trafficking in crystal meth and was facing a lengthy minimum mandatory, so he entered into a substantial assistance agreement with the State. That agreement was later revoked when Leader’s client failed to appear for a mandatory court hearing. Thereafter, Leader’s client was apprehended, and contacted Leader “in the hopes of the state being willing to work with him on some level, because he was facing a total of 80 years, he had advised [Leader] that he believed, through friends, and through friends in the jail, he could get information.” Leader testified he had never met Joshua, and Leader did not know who sent the package to Joshua’s home. Any information Leader had about the package delivery came from his client or from a friend of his client. When asked to identify the name of the client, Leader declined to answer, asserting attorney-client privilege. When asked how Leader obtained the FedEx tracking number for the package, Leader also declined to answer, again asserting attorney-client privilege.[5]
Thereafter, Joshua deposed Detective Reed. At his deposition, Detective Reed acknowledged that the person who gave him the information about the package was not a documented confidential informant; that the person who testified at the in camera hearing (attorney Leader)[6] was not the source of the information, but instead was just the messenger; and that the identity of the confidential informant was still unknown to Detective Reed (and still unknown to the trial court). In fact, Detective Reed acknowledged that he had “no clue” who the information came from and that he had never had contact with this actual source. Detective Reed further acknowledged he did not know, at the time of the investigation, whether the actual source of the information was credible or reliable, nor did he know who sent the package or whether Joshua was a willing *855 participant in the package being sent to Ms house.

The Motion to Suppress

Joshua filed a motion to suppress the drugs and money seized at his home, and also moved to suppress any statements made by him to police. Joshua also requested a Franks hearing,[7] contending that the affidavit for the search warrant contained intentionally false statements or statements made with reckless disregard for the truth. Specifically, Joshua argued that Detective Reed’s affidavit incorrectly averred that he received information from a documented confidential informant with the Fort Lauderdale Police Department who had previously provided information which had proven to be trustworthy and reliable. Instead, the person who provided the critical information to Detective Reed was not a documented confidential informant, but instead was attorney Leader, who was simply relaying information from an undisclosed source, and that Detective Reed had no knowledge of the credibility of this undisclosed source or the reliability of the information provided. The State responded that Joshua’s motion failed to make a substantial preliminary showing that the affidavit contained a false statement or that any false statements were made knowingly and intentionally or with reckless disregard for the truth. Further, the State asserted, even if the affidavit contained omissions or false statements, suppression was not warranted because Joshua failed to make a preliminary showing under Franks that, but for the false statements, the judge would not have found probable cause for the issuance of the warrant. Specifically, the State pointed out that a certified narcotics canine alerted' to the presence of a controlled substance in the package, which in and of itself provided probable cause to conduct a search of the package.
Following an evidentiary hearing, the court denied the motion to suppress and the motion to compel disclosure of the identity of the confidential informant.
As to the motion to suppress, the trial court determined it “does not believe that there was any type of false statement that was made, that any false statement was knowingly and intentionally made, that there was any reckless disregard for the truth. Nor that [if] the false statement was excised from it, that the magistrate would not have had probable cause in order to be able to issue this particular warrant.”[8] As to the disclosure of the confidential informant, the trial court’s order simply denied the motion without elaboration.
The parties engaged in further discovery and attorney Leader was served with subpoenas for deposition and trial. Leader filed a motion for protective order and/or for an ex-parte in camera hearing. The court conducted a second in camera hearing on July 23,2013.[9] Again, neither Josh *856 ua nor his attorney were permitted to attend, but were permitted to submit questions to be asked of Leader during the hearing. One of those questions asked Leader to identify the name of his client from whom he received this information, but Leader asserted attorney-client privilege and once again declined to answer the question. Leader did testify at the in camera hearing that his client had been a confidential informant for Detective Reed in the past.
Following this second in camera hearing, Joshua renewed his motion to compel disclosure of the confidential informant. The renewed motion was also denied by the trial court, which found that Joshua was not entitled to disclosure of the identity of the confidential informant because the confidential informant would not be testifying against Joshua at trial.

The Motions to Disqualify the Trial Judge

During the pendency of the case, Joshua filed two verified motions to disqualify Judge Siegel, both of which were denied by the trial court. In his second motion to disqualify, Joshua alleged that because Judge Siegel’s wife was Facebook friends with Detective Reed and because Detective Reed was Facebook friends with the prosecutor, Ted Daus, Joshua reasonably believed that he would not receive a fair trial.[10]

The Trial

Joshua proceeded to trial in March 2015. At the conclusion of the trial, and at Joshua’s request, the trial court provided the jury with the standard instruction on the defense of subjective entrapment. The jury found Joshua guilty of both counts. Joshua was sentenced concurrently on each count to forty-two months in prison, with a three-year minimum mandatory, followed by ten years’ drug offender probation. The trial court denied Joshua’s motion for new trial and this appeal followed. The State cross-appeals the trial court’s decision to grant Joshua’s request for a jury instruction on entrapment.[11]

*857
ANALYSIS

• We affirm the trial court’s rulings in all respects, save one: the denial of Joshua’s motion to compel disclosure of the identity of the confidential informant. We review this issue generally for an abuse of discretion. Thomas v. State, 28 So.3d 240, 243 (Fla. 4th DCA 2010); State v. Simmons, 944 So.2d 1122 (Fla. 3d DCA 2006); U.S. v. Moralez, 908 F.2d 565 (10th Cir.1990), However, where the issue is whether the trial court applied the correct law, our standard of review is de novo. Simmons, 944 So.2d at 1127. Under either standard, however, we are compelled to reverse.
As to the trial court’s denial of the motion to compel disclosure of the identity of the confidential informant, the trial court erred in two respects: by failing to take the testimony of the actual confidential informant during the in camera hearing, and in its too-narrow analysis of the circumstances under which disclosure of a confidential informant should be compelled. Because the confidential informant was never required to testify at the in camera hearing, no proper determination could be made on the merits of Joshua’s motion. We therefore reverse for a new trial on Count I of the Information, which is the only count involving the confidential informant, and remand for the trial court to conduct a proper in camera hearing, to include the taking of the testimony of the confidential informant. We express no opinion on the ultimate merits of the motion to compel disclosure of the confidential informant, but include the following discussion, as it further explains our holding and is pertinent to the analysis which the trial court will be required to undertake on remand.
In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the United States Supreme Court established the framework for a trial court to utilize when determining whether to compel the State to disclose a confidential informant. The Roviaro analysis, followed by Florida courts,[12] does not create a “fixed rule,” but encourages courts to strike a balance between “the public interest in protecting the flow of information [and] the individual’s right to prepare his defense.” Id. at 62, 77 S.Ct. 623.
The State has a limited privilege to withhold disclosure of the identity of the confidential informant. State v. Hassberger, 350 So.2d 1 (Fla.1977).[13] The purpose of this limited privilege is to “encourage citizens to perform their obligation of, communicating their knowledge of the commission of crimes to law enforcement.” State v. Rivas, 25 So.3d 647, 650 (Fla. 4th DCA 2010)(citing Roviaro, 353 U.S. at 59, 77 S.Ct. 623). However, the State’s limited privilege to withhold the identity of a confidential informant must give way where disclosure “is relevant and helpful to the defense of an accused or is essential to a *858 fair determination of a cause.” Thomas, 28 So.3d at 244 (quoting Miller v. State, 729 So.2d 417, 419 (Fla. 4th DCA 1999)). “When asserting that disclosure of information is necessary to establish a specific defense, ‘the defendant must make a preliminary showing of the colorability of the defense prior to disclosure.’ ” Thomas, 28 So.3d at 244 (quoting State v. Hernandez, 546 So.2d 761, 762 (Fla. 2d DCA 1989)). See also State v. Zamora, 534 So.2d 864, 868 (Fla. 3d DCA 1988). Thus, the defendant must assert a legally recognized defense to the crime charged, support that defense with sworn proof, and show that the confidential informant is a material witness to the defense. Id. at 868. Further, “where the defendant comes close to, but technically falls short of, establishing this first component of the Roviaro exception, the trial court is nonetheless required to order the state to produce the confidential informant for the court’s in camera review to determine if the subject informant is a helpful witness to the defense being raised by the defendant.” Id. (emphasis added). See also Rivas, 25 So.3d at 650 (Fla. 4th DCA 2010) (observing that “[w]hen a defendant succeeds in meeting the ‘initial burden of showing that disclosure is necessary to a specific defense, the trial court should hold an in camera hearing to determine, in fact, whether the disclosure would be relevant and helpful to the defense’”) (quoting State v. Roberts, 686 So.2d 722, 723 (Fla. 2d DCA 1997)).
Our review of the record leads inescapably to the conclusion that Joshua met his initial burden of asserting a legally cognizable defense to the charge of trafficking in crystal meth, which he supported with sworn proof, and established that the confidential informant may be a material witness to his defense, such that the trial court was required to conduct an in camera hearing of the confidential informant and thereafter apply Roviaro and its Florida progeny to determine whether disclosure is appropriate under the circumstances presented.
In this case, Joshua was charged in Count I with trafficking in crystal meth. He pleaded not guilty and, as to this count, asserted that he “intends to present as a defense that he lacked any knowledge that the package containing methamphetamine was being dispatched to his home and that the package was deliberately sent to him by a person or persons who wished to cause his arrest.”
In other words, Joshua’s defense to Count I was that he was set up, that he did not know drugs were being delivered to him, and that he had no intent to receive or keep the drugs.[14] His motion also as *859 serted that the confidential informant “provided very detailed information about the package prior to its delivery, including the 12-digit tracking number assigned to the package by Fedex, indicating that the Cl had access to information that could only be gained from the person who sent the package” and that the informant’s testimony was crucial to Joshua’s defense. Attached to Joshua’s motion was his affidavit, wherein he averred that he had no knowledge that the package was being shipped to his residence and no knowledge of its contents and that he believed the package was sent by a third person in order to cause his arrest.
Although the trial court conducted an in camera hearing of the confidential informant’s attorney, Michael Leader, Mr. Leader was unwilling to identify his client by name, and was unable to offer any testimony which would allow the court to apply the proper analysis and make the necessary determination under Roviaro. The informant, whose identity has never been disclosed to anyone, is “the only witness who might have testified to [Joshua’s] possible lack of knowledge of the contents of the package.” “[I]t is the only testimony that could support [Joshua’s] defense theory that he was not involved” in the shipping of narcotics to himself and that he was set up by other parties. Moralez, 908 F.2d at 568. See also Miller v. State, 729 So.2d 417 (Fla. 4th DCA 1999) (holding defendant’s motion for disclosure sufficient to entitle him to an in camera hearing of the informant where he alleged the defense of misidentification). As was the case in Moralez, 908 F.2d at 568, “[i]t is unclear from the record on what basis the [trial] court concluded the confidential informant was not an active participant in the crime,” and we find that the trial court could not reasonably reach this conclusion without first considering the in camera testimony of the informant.[15] Compare, Harris v. State, 939 So.2d 338 (Fla. 4th DCA 2006) (affirming trial court’s refusal to disclose informant’s identity where there was nothing more than speculation that the informant would add anything to the known facts and the defendant did not seek an in camera hearing or raise, as an issue on appeal, the trial court’s failure to hold a hearing).

CONCLUSION

Because we conclude that the trial court failed to conduct a proper in camera hearing, we reverse the conviction and sentence on Count I, and remand with instructions that the trial court conduct an in camera hearing that includes taking the testimony of the confidential informant and determining under Roviaro and its *860 Florida progeny whether disclosure of the confidential informant is “relevant and helpful to the defense of [the] accused or is essential to a fair determination of a cause.” Miller, 729 So.2d at 419. We affirm on the other issues raised by Joshua, affirm his conviction and sentence on Count II,[16] and affirm the trial court’s ruling on the State’s cross-appeal.

Affirmed in part, reversed in part, and remanded.

SALTER, V. and FERNANDEZ, I., Associate Judges, concur.

. The notice of appeal was properly and timely filed with the Fourth District Court of Appeal. Thereafter, the Florida Supreme Court directed that this appeal be reviewed and determined by a panel of judges from the Third District Court of Appeal, sitting by designation as temporary judges of the Fourth District Court of Appeal.

. This amount just met the threshold trafficking amount necessary to subject Joshua to a mandatory minimum sentence of seven -years and a mandatory fine of $100,000. See § 893.13(f)l.b., Fla. Stat. (2009) (providing for a seven-year mandatory minimum sentence for any person who is knowingly in actual or constructive possession of methamphetamine in an amount of twenty-eight grams or more). However, the State ultimately charged trafficking in an amount of more than fourteen but less than twenty-eight grams, which carries a mandatory minimum sentence of three years and a mandatory fine of $50,000. See § 893.13(f)!.a.

. See United States v. Grubbs, 547 U.S. 90, 94, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (observing that "[a]n anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.’ 2 W. LaFave, Search and Seizure § 3.7(c), p. 398 (4th ed,2004). Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time — a so-called ‘triggering condition.’ ”); Bernie v. State, 524 So.2d 988, 991 (Fla.1988) (holding that the use of anticipatory search warrants is not prohibited by either the Florida Constitution or the United States Constitution).

.Joshua was permitted to submit questions to be posed at the in camera hearing, and the court ensured that those questions were asked of Leader. However, a review of the list of questions evidences clearly that Joshua anticipated (reasonably) that the confidential informant, and not attorney Leader, would be the person testifying at this hearing.

. However, during the same in camera hearing, Leader testified that he was provided with the tracking number through a phone call made to Leader by a friend of the client.

, At the time of Detective Reed’s deposition, Joshua and his counsel were still unaware that Leader was the person who testified at the in camera hearing.

. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

. Joshua filed an amended motion to suppress based upon the lack of qualifications or training of K-9 Kim. The court held an additional hearing on this issue and denied the amended motion to suppress, finding, inter alia, that the affidavit established probable cause and that "the information that's set forth [in the affidavit] with regard to K-9 Kim, as to her or his qualifications, are in fact sufficient in order for the judge to base that finding of probable cause."

.The transcript of both in-camera hearings were filed with this court under seal. Having reviewed these transcripts, we conclude that no purpose would be served in maintaining them under seal and therefore order that, upon remand, the transcripts of the in-camera hearings held on October 25, 2010 and July 23, 2013, shall be unsealed and available to the parties.

. We affirm the trial court's orders denying each of these motions. As to the second motion to disqualify, Joshua's allegation that Detective Reed was Facebook friends with Judge Siegel’s wife (not Judge Siegel himself), and that Detective Reed was also Facebook friends with the assigned assistant state attorney, renders this case distinguishable from the allegations found legally sufficient in Domville v. State, 103 So.3d 184 (Fla. 4th DCA 2012).

. The trial court read the standard instruction on the defense of subjective entrapment. See Fla. Std. J. Inst. (Crim.) 3,6(j), We cannot say this was an abuse of discretion. See Larsen v. State, 82 So.3d 971 (Fla. 4th DCA 2011); Williams v. State, 34 So.3d 768 (Fla. 2d DCA 2010); Worley v. State, 848 So.2d 491 (Fla. 5th DCA 2003). Nevertheless, and although neither party has cited it, we commend the trial court on remand to consider whether the more appropriate instruction in this case would be Florida Standard Jury Instruction 3,6(m), adopted by the Florida Supreme Court in 2013. See In re Standard Jury Instructions in Criminal Cases — Report No. 2011-05, 141 So.3d 132 (Fla.2013). That instruction provides, in part:

3.6(m) AFFIRMATIVE DEFENSE: TEMPORARY POSSESSION OF CONTROLLED SUBSTANCE FOR LEGAL DISPOSAL

It is a defense to the charge of [possession of a controlled substance] [trafficking via possession] for a person to briefly possess a controlled substance for the sole purpose of legal disposal. In order to find the defendant briefly possessed a controlled substance for the sole puipose of legal disposal, you must find all of the following:
1. (Defendant) possessed the controlled substance,
2. (Defendant) acquired the controlled substance without unlawful intent.
3. The possession of the controlled substance was brief and (defendant) sought to dispose of the controlled substance without delay,
4. The temporary possession was solely for the purpose of legal disposal.

Definitions.

*857 “Legal disposal” means to destroy or throw away the controlled substance or to turn in the controlled substance to a law enforcement officer.
This defense does not apply if (defendant) disposed of or surrendered a controlled substance because [he][she] believed a law enforcement officer had discovered, or would have imminently discovered that [he][she] was in possession of a controlled substance.

. See e.g., State v. LaBron, 24 So.3d 715 (Fla. 4th DCA 2009).

. This limited privilege has been codified in Florida Rule of Criminal Procedure 3.220(g)(2), which provides:
Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose the informant's identity will infringe the constitutional rights of the defendant.

. The State argues that Joshua's bare possession of the narcotics — even if temporary — was enough to convict him, rendering the undisclosed informant issue irrelevant and any error harmless; the State contends it does not matter how Joshua came into possession of the drugs, but only that he had them in his possession. Under the circumstances presented, we do not agree that the undisclosed informant issue can be deemed irrelevant. See Roviaro, 353 U.S. at 63, 77 S.Ct. 623 (noting that although a conviction is authorized where the State proves the defendant possessed narcotics, "this statutory presumption does not reduce the offense to one of mere possession or shift the burden of proof; it merely places on the accused, at a certain point, the burden of going forward with his defense.”)
If we accept (as we must for purposes of analyzing this issue on appeal) that Joshua did not know who sent the crystal meth; did not ask for the crystal meth to be sent to him; did not intend to receive or maintain possession of the crystal meth; and was going to notify the police about the crystal meth, then any evidence supporting that asserted defense (including perhaps the testimony of the confidential informant) could reasonably affect a jury’s determination of whether Joshua knowingly possessed the crystal meth or whether, as he contended, his was a mere temporary *859 possession, which lasted fifteen to twenty minutes before the police entered the home and seized the drugs. Under the State’s argument, a Good Samaritan who discovers a controlled substance in a public park where children are playing, picks it up and takes it to the police station a block away, would have no defense to the charge of possession of that controlled substance. However, that is not the state of the law. See, e.g., Stanton v. State, 746 So.2d 1229 (Fla. 3d DCA 1999) (holding it is a defense to the charge of possession of a controlled substance for a person to briefly possess it for the sole purpose of legal disposal); Ramsubhagv. State, 937 So.2d 1192 (Fla. 4th DCA 2006) (recognizing the principle enunciated in Stanton); Robinson v. State, 57 So.3d 278 (Fla. 4th DCA 2011) (same). See also Fla. Std. J. Inst. (Crim.) 3.6(m), and discussion at note 11 supra.

. It is also unclear "whether and how the [trial] court balanced the benefits of disclosure and production for [Joshua] against the resulting harm to the government as required by Roviaro." Moralez, 908 F.2d at 568. Neither the transcript of the in camera hearing nor the trial court's order reveals any analysis of the potential harm or prejudice to the State, law enforcement or the informant himself in compelling disclosure of his identity. Id. at 569.

. By our affirmance of the trial court’s denial of Joshua’s motion to suppress, it necessarily follows that the police officers were "legitimately” in Joshua’s house when they observed the ecstasy (Count II) in plain view and seized it. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); Rimmer v. State, 825 So.2d 304 (Fla.2002). And because Joshua’s motion for disclosure of the identity of the confidential informant related only to the crystal meth charge (Count I), the trial court’s erroneous denial of that motion requires reversal for a new trial solely as to Count I.