DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT JOSHUA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3724

[October 30, 2019]

Appeal of order denying rule 3.850 motion from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 09-21533CF10A.

Kibbey | Wagner, and Jordan R. Wagner, Stuart, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

## INTRODUCTION

Robert Joshua appeals the summary denial of his motion for postconviction relief, which was premised on claims of newly-discovered evidence and ineffective assistance of trial counsel. For the reasons that follow, we find no error in the trial court's summary denial and affirm.

## FACTS AND PROCEDURAL BACKGROUND

The salient facts of this case are set forth in detail in our prior opinion affirming in part and reversing in part following Joshua's trial, conviction and sentence on the charges of trafficking in methamphetamine (crystal meth) and trafficking in methylenedioxymethamphetamine (ecstasy). *See Joshua v. State,* 205 So. 3d 851 (Fla. 4th DCA 2016).[1] Nevertheless, we

_____

[1] Joshua was convicted in the 17th Judicial Circuit in and for Broward County, Florida. He filed a timely notice of appeal with the Fourth District Court of Appeal (4D15-1917). Thereafter, the Florida Supreme Court directed that appeal be

reproduce some of the background facts to place into proper context Joshua's postconviction claims and our analysis of those claims:

On November 22, 2009, Detective Thomas Reed of the Fort Lauderdale Police Department received a phone call from attorney Michael Leader. In that conversation, attorney Leader told Detective Reed that he had information from a client (who was incarcerated in the Broward County Jail), that a package containing methamphetamine ("crystal meth") was going to be delivered via Federal Express ("FedEx") to a person named Robert Joshua, at a specific street address in Fort Lauderdale ("Fort Lauderdale home"). Detective Reed asked attorney Leader to obtain additional details. Leader then obtained those additional details and called Detective Reed back, this time providing the FedEx tracking number for the package. However, at no time did attorney Leader provide Detective Reed with the name of the client from whom attorney Leader received this information.

Acting on this tip, K–9 Deputy Julie Foster and her certified drug detection canine (K–9 Kim) were dispatched to the FedEx facility in Fort Lauderdale to locate the package with the identified tracking number. Once the package was located, Deputy Foster placed it next to three other randomly-selected packages, and the drug detection dog alerted to the package with the identified tracking number, signifying the presence of narcotics. The package was seized and a search warrant was obtained. Pursuant to the warrant, the police opened the package, which contained 28.4 grams of crystal meth.

Detective Reed then prepared an affidavit and application for an anticipatory search warrant for the Fort Lauderdale home. The affidavit indicated Detective Reed would attempt to deliver the package at the Fort Lauderdale home and, if the package was accepted by someone within the premises, he would execute the search warrant to retrieve the crystal meth, conduct a narcotics investigation and effectuate an arrest if

reviewed and determined by a panel of judges from the Third District Court of Appeal, sitting by designation as temporary judges of the Fourth District Court of Appeal. In like fashion, a panel of judges from the Third District Court of Appeal, sitting by designation as temporary judges of the Fourth District Court of Appeal, is reviewing and determining the instant appeal.

appropriate. In this affidavit, Detective Reed indicated that the information concerning the package had been obtained from "a documented confidential informant with the Ft. Lauderdale Police Department" who "has provided information in past investigations and has proven to be trustworthy and reliable."

The anticipatory search warrant was issued on November 24, 2009, and on that same day an undercover police officer, dressed as a FedEx delivery person, knocked on the door at the Fort Lauderdale home with the re-sealed package containing crystal meth. Joshua opened the door and took the package. Detective Reed and other officers then waited approximately fifteen to twenty minutes before knocking on the door again. Joshua opened the door and told Detective Reed "it's in the safe I knew you were coming." Joshua then opened the safe located in his master bedroom closet, where the 28.4 grams of crystal meth were found. The FedEx packaging, in which the crystal meth had been delivered, was found in a trash can in the bedroom. Police also seized $78,376 found in the safe.

During the execution of the warrant, police observed, in plain view on top of the bedroom dresser, fifty-two methylenedioxymethamphetamine ("MDMA" or "ecstasy") pills, which were seized along with the crystal meth. According to Detective Reed, Joshua admitted to selling ecstasy, but denied that he ordered the crystal meth or that he was expecting its delivery. Joshua was arrested and charged with trafficking in crystal meth (Count I) and trafficking in ecstasy (Count II). Joshua pleaded not guilty to both charges.

*Id.* at 852-53 (footnotes omitted).

Joshua was convicted of and sentenced for trafficking in crystal meth (Count I) and trafficking in ecstasy (Count II). On appeal, Joshua challenged both convictions on several grounds.

This court affirmed the conviction and sentence for trafficking in ecstasy—i.e., the drugs observed in plain view when police entered Joshua's home to execute the anticipatory search warrant which had been

issued for the crystal meth delivered by FedEx.[2] However, we reversed and remanded the conviction and sentence for trafficking in crystal meth. As to that charge, we found 1) Joshua's motion to compel the disclosure of the confidential informant's identity was legally sufficient; and 2) Joshua's accompanying affidavit satisfied the "initial burden of asserting a legally cognizable defense to the charge of trafficking in crystal meth, which he supported with sworn proof, and established that the confidential informant may be a material witness to his defense, such that the trial court was required to conduct an in camera hearing of *the confidential informant* and thereafter apply *Roviaro* [*v. United States*, 353 U.S. 53 (1957)] and its Florida progeny to determine whether disclosure is appropriate under the circumstances presented." *Id.* at 858. As we noted: "Joshua's defense to Count I [trafficking in crystal meth] was that he was set up, that he did not know drugs were being delivered to him, and that he had no intent to receive or keep the drugs." *Id.* at 858.

And although the trial court did conduct an in camera hearing on Joshua's motion to compel disclosure of the confidential informant, the hearing was not properly conducted, requiring us to reverse the conviction for trafficking in crystal meth and remand with instructions for the trial court to conduct a proper in camera hearing on the motion. *Id.* at 859.

In other words, we determined that the trial court's failure to conduct a proper in camera hearing required reversal of the conviction and sentence for Count I only (crystal meth) because of Joshua's asserted defense as to that count. Had the State, following our remand, resumed its prosecution of Joshua on the crystal meth count, the trial court would have been required to conduct a proper in camera hearing, including taking testimony of the confidential informant and determining whether disclosure of the confidential informant's identity was necessary to Joshua's defense to the crystal meth charge (Count I). Upon remand, however, the State announced a nolle prosequi on the crystal meth charge, thereby rendering further proceedings moot.

In his current motion for postconviction relief, Joshua argues that he has newly-discovered evidence that would have led the trial court to invalidate the anticipatory search warrant for Joshua's home. Joshua also asserts that defense counsel provided ineffective assistance of counsel and that had counsel performed in a constitutionally effective manner, in

---

[2] Importantly, in affirming Joshua's conviction and sentence for trafficking in ecstasy (Count II), we also affirmed the trial court's denial of his motion to suppress the warrant. *Id.* at 860 n. 16.

4

combination with the newly-discovered evidence, the trial court would have found the anticipatory search warrant invalid. If the anticipatory search warrant was invalidated (the argument goes), the officers would not have been legitimately in Joshua's home, and thus the trial court would have been required to suppress not only the crystal meth delivered to Joshua by FedEx, but the ecstasy observed by police in plain view when they entered Joshua's house to execute the warrant. *See, e.g., Pagan v. State*, 830 So. 2d 792 (Fla. 2002) (holding items in plain view may be seized when, inter alia, the seizing officer is in a position where he has a legitimate right to be).

## **DISCUSSION**

Joshua's argument is without merit. Even accepting as true his claims of newly-discovered evidence and ineffective assistance of counsel, he is not entitled to relief. That is because, regardless of the identity or motivations of the confidential informant or misinformation alleged to have been provided, and regardless of any asserted ineffective assistance rendered by defense counsel, the anticipatory search warrant was nevertheless valid because of the following three circumstances:

First, no Fourth Amendment violation occurs when law enforcement, based only upon reasonable suspicion, temporarily detains items placed in the U.S. mail or placed with a private delivery service such as Federal Express. *See, e.g., United States. v. Van Leeuwen*, 397 U.S. 249, 252-53 (1970); *United States v. Robinson*, 390 F.3d 853, 870-75 (6th Cir. 2004); *United States v. Banks*, 3 F.3d 399, 401-03 (11th Cir. 1993); *United States v. Bates*, 100 F. Supp. 3d 77, 84-86 (D. Mass. 2015).

Second, once the FedEx package was temporarily detained, a certified drug detection canine alerted on a package, indicating the presence of narcotics inside the package. The canine's alert on the FedEx package provided probable cause for a warrant to search the package. *See, e.g., Flowers v. State*, 755 So. 2d 708, 710 (Fla. 4th DCA 1999); *State v. Griffin*, 949 So. 2d 309, 311-14 (Fla. 1st DCA 2007); *State v. Taswell*, 560 So. 2d 257, 257-58 (Fla. 3d DCA 1990). *See generally, Florida v. Harris*, 568 U.S. 237, 243-50 (2013). Police validly obtained a search warrant and, upon opening the package, confirmed it contained narcotics, later determined to be crystal meth.

Third, the execution of this valid search warrant, based upon the canine's alert to the package, and the discovery of crystal meth inside the package, provided police with a legally sufficient basis to obtain an anticipatory search warrant for Joshua's home—the location to which the

FedEx package was addressed and bound for delivery. It was during the execution of this anticipatory search warrant (to search for and seize the crystal meth) that the officers observed ecstasy pills in plain view inside Joshua's home, establishing the basis for the charge of trafficking in ecstasy (Count II), the only charge for which Joshua stands convicted.

The claims raised by Joshua in his postconviction motion do not alter the above-described acts and events. And the claims of newly-discovered evidence and ineffective assistance of counsel (whether considered jointly or separately) fail to create a reasonable probability of a different outcome regarding the trial court's determination of the validity of the search warrants. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (announcing the two-prong test for establishing ineffective assistance of trial counsel, requiring that a defendant prove both constitutionally deficient performance and actual prejudice; further holding that, in assessing the actual prejudice prong, the relevant question is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.")

We find the remaining issues raised by Joshua to be without merit.

*Affirmed.*

EMAS, LOGUE and MILLER, Associate Judges, concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

6